FRANCIS J. SULLIVAN

*v.*

NEWARK LUNCH ROOM COMPANY.

[Decided June 17th, 1918.]

</div>

1. Where an insolvent company in the hands of a receiver offers a settlement, approved by a majority of the creditors both in number and amount, which settlement proposes that the receiver be discharged and the assets retransferred to the corporation now in control of a committee of creditors, and that time notes shall be given to the creditors for the face amount of their claims, although there was no objection made on the return of the order to show cause why such course should not be pursued, this court will not make an order in accordance with the proposed plan because the business cannot be resumed with safety to the public, as the liabilities of the corporation will exceed its. assets, new debts will be created, and the new creditors may be left to bear the burden.

2. Mere extension of time for payment by insolvent corporation may not be "providing for debts" within *2 Comp. Stat. 1910 p. 1645 § 69.*

3. If the court permits the corporation to continue business, new creditors must be assumed to consider that they are dealing with a solvent concern, when in fact they are not, and thus money of new creditors may be taken and appropriated by the old creditors.

4. A court should carefully scrutinize any plan of readjustment and settlement, and of its own motion should refuse to approve such a plan unless it appear that business can be resumed with safety to the public.

On bill, &c.

*Mr. Jeremiah F. Hoover,* for the motion.

*Mr. Chester W. Fairlie,* receiver, *pro se.*

LANE, V. C.

The Newark Lunch Room Company has been decreed insolvent by this court; a receiver has been appointed; he has operated the business under the orders of this court up until this time; a creditors' committee has obtained control of practically all the capital stock; the liabilities amount to upwards of $12,000, tangible assets are appraised at upwards of $6,000, exclusive of good-will; the creditors' committee, representing a substantial amount over a majority of the creditors and over one-half of the total indebtedness, now propose that the receiver be discharged, the assets transferred to the corporation now in control of the committee and that time notes be given to the creditors for the face amount of their claims. On the return of an order to show cause why such a course should not be pursued no one appeared objecting. Ought the court, notwithstanding the request of a great majority of the creditors, both in number and amount, and the acquiescence, in view of the failure to object, of all the creditors, refuse to permit the consummation of such a plan? The title of the act under which the receiver was appointed was originally "An act to prevent fraud by incorporated companies" (Revision), approved April 15th, 1846. *Rev. 1847 p. 129.* The section of the act permitting the court to discharge the receiver and reinvest the corporation with its privileges and franchises, requires that before this is done, the debts must have been paid or provided for, and that it appears to the court that there remains, or can be obtained by further contributions, sufficient capital to enable it to resume its business. Section 69 of "An act concerning corporations." *2 Comp. Stat. p. 1645.* A mere extension of time for payment may not be providing for debts. *Bull* v. *International Power Co., 87 N. J. Eq. 1.* The procedure contemplated by the statute is in the nature of an equitable *quo warranto. Gallagher* v. *Asphalt Co., 65 N. J. Eq. 258.* Not only are the stockholders and creditors

to be considered but the public generally. If every stockholder and every creditor consented to a plan of reorganization, unless this court can see that the business can be resumed with safety to the public, it ought not to approve the plan. If the plan proposed in the present case be approved, the result will be that the corporation will be started afresh with liabilities exceeding its assets; new debts will be created; the old debts, the corporation through stock ownership being in control of old creditors, may be paid, and new creditors left to bear the burden; new creditors must be assumed to consider that they are dealing with a solvent concern, since this court has permitted the concern to continue, yet, in fact, they are not, and thus money of new creditors may be taken and appropriated by the old creditors.

There are two analogous cases now fresh in my mind; in one, the company was adjudicated bankrupt; a creditors' committee was formed; the assets were bought in at sale by the creditors' committee; a new corporation was formed; the assets were turned over to it, at a valuation in excess of the amount paid by the creditors' committee at the sale in bankruptcy, but at a valuation claimed to be fair; notes were delivered for the purchase price; the new corporation became insolvent; a large part of the old debts had been liquidated; the money of the new creditors had been used in liquidating them; it is now claimed that the new debts share *pari passu* with the balance due on the old; at least two years in two courts has now been spent in the winding up of the new corporation, and it is not yet been determined what the relative rights of the parties are. In *Horne v. Harrington* there was a taking over by a corporation of the business of an individual insolvent; the creditors got together, formed a corporation, took over the assets of the insolvent individual at a valuation based not on actual value but on the amount due from the individual to creditors; stock was issued to the creditors; the company became insolvent. In the latter case I have just been obliged to order an assessment on the stock to raise sufficient money to pay new debts. These two cases illustrate the care with which the court should scrutinize any plan such as now before it, before permitting it to become operative, and the court should, on its own motion, refuse to ap-

prove such a plan, unless it appears that the business can be resumed with safety to the public. If the creditors desire to reduce the stock of the company to an amount which will represent the fair value of the assets and will distribute that stock among themselves in proportion to their debts and take the stock in payment of their debts, another situation will have been presented.

I am convinced that the present plan does not satisfy the requirements of the sixty-ninth section and will decline to direct an order discharging the receiver and reinvesting the corporation with its privileges and franchises.

A receiver has been appointed and has been continuing the business for a considerable time. It ought to be sold as a going concern. It should be sold at once. The receiver is directed to apply for and obtain an order directing him to sell within two weeks and to bring on a motion to confirm the sale immediately thereafter.

Settle order within one day.